[No. C052528. Third Dist. Oct. 25, 2006.]

TEMPLETON DEVELOPMENT CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; DICK EMARD ELECTRIC, INC., Real Party in Interest.

## COUNSEL

Sproul Trost and Thomas G. Trost for Petitioners.

No appearance for Respondent.

Porter & Associates and William L. Porter for Real Party in Interest.

## OPINION

**CANTIL-SAKAUYE, J.**—On January 23, 2006, real party in interest Dick Emard Electric, Inc. (Emard), an electrical contractor, sued petitioner Templeton Development Corporation (Templeton), a general building contractor based in Nevada, for breach of contract, common counts, violation of Civil Code section 3260, and violation of Business and Professions Code section 7108.5. Also included in the complaint were causes of action against petitioners Carefree Natomas Limited Partnership; Carefree Natomas, LP; and CALGP Corporation on a stop notice and to foreclose on a mechanic's lien. Emard's claims involve materials, labor and equipment supplied for construction of an apartment complex known as Carefree Natomas in Sacramento.

Petitioners unsuccessfully moved to dismiss Emard's complaint on the ground of inconvenient forum. They argued the subcontract agreement between Emard and Templeton required Emard to submit the dispute to mediation or arbitration in Las Vegas, Nevada, before filing suit. The court ruled that Code of Civil Procedure section 410.42 (section 410.42) rendered the out-of-state mediation provision unenforceable.[1]

---

[1] Section 410.42 provides:

"The following provisions of a contract between the contractor and a subcontractor with principal offices in this state, for the construction of a public or private work of improvement in this state, shall be void and unenforceable:

"(a) A provision which purports to require any dispute between the parties to be litigated, arbitrated, or otherwise determined outside this state.

"(b) A provision which purports to preclude a party from commencing such a proceeding or obtaining a judgment or other resolution in this state or the courts of this state.

"For purposes of this section, 'construction' means any work or services performed on, or materials provided for, a work of improvement, as defined in Section 3106 of the Civil Code, and for which a lien may be claimed pursuant to Section 3110 of the Civil Code (whether or not a lien is in fact claimed) or for which such a lien could be claimed but for Section 3109."

Petitioners filed a petition for writ of mandate asking this court to set aside the trial court order denying their motion to dismiss. Alternatively, they seek an order remanding the matter for determination whether the Federal Arbitration Act, 9 United States Code section 1 et seq. (FAA), preempts section 410.42.[2] Because we conclude the trial court was correct in ruling section 410.42 controls, and Emard was entitled to file suit under the terms of the subcontract agreement with Templeton, we need not reach the federal preemption issue.

## FACTUAL AND PROCEDURAL BACKGROUND

Templeton and Emard entered into the subcontract agreement which is the subject of Emard's civil complaint on September 25, 2003. Three paragraphs under the caption "Disputes Relating Solely to Contractor's Acts or Omissions" formed the basis for petitioners' motion to dismiss.

Paragraph 11.3.1 states in relevant part: "*Any dispute, claim or controversy* (collectively referred to as 'dispute') between Contractor and Subcontractor not relating to or arising from any action or inaction of the Owner and not involving the Prime Contract Documents and which cannot be settled through negotiation, *shall be submitted to mediation* administered by the American Arbitration Association under its Commercial Mediation Rules *before resorting to Arbitration or litigation as discussed below*, unless otherwise agreed to in writing by the parties hereto. *Either party may make a demand* with the American Arbitration Association *to proceed with mediation and this agreement to mediate shall be enforceable at law. Mediation is an express condition precedent to the hearing of any arbitration demanded under this Article* and the mediation proceedings shall take place within twenty (20) days of the mediation demand. . . . *If either party resorts to arbitration or court action based on a dispute or claim to which this paragraph applies without first attempting to resolve the matter through mediation, then in the discretion of the Arbitrator or Judge, that party shall not be entitled to recover their attorney's fees and costs even if such fees and costs would otherwise be available to that party in any such arbitration or court proceeding.*" (Italics added.)

---

[2] Title 9 United States Code section 2, the operative provision of the FAA, provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Paragraph 11.3.2 reads in relevant part: *"If, and only if, the parties hereto are unable to resolve the dispute through mediation, then the dispute shall be submitted to binding Arbitration* administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules <u>or to litigation at Contractor's election</u>, and judgment on the award rendered by the Arbitrator(s) may be confirmed by any court having jurisdiction thereof. Unless Contractor elects to have the dispute submitted to litigation before a court having jurisdiction thereof, the foregoing agreement to arbitrate shall be specifically enforceable in any court of competent jurisdiction. . . ." (Italics added.)

Paragraph 11.3.3 provides: *"Unless otherwise agreed to by the parties in writing, any mediation or the arbitration shall be held in Las Vegas, Nevada. . . ."* (Italics added.)

Without citing facts in support of their claim, petitioners asserted in their motion papers that Emard "failed to satisfy the condition precedents [*sic*] of resolving their disputes via mediation and arbitration in Nevada prior to filing suit." They also maintained that as third party beneficiaries, Carefree Natomas Limited Partnership; Carefree Natomas, LP; and CALGP Corporation were entitled to assert the same rights under the contract as Templeton.[3]

Emard responded that section 410.42 "void[ed]" the subcontract agreement "to the extent [it] require[d] a dispute to be determined outside of California and . . . to the extent [it] purports to preclude a party from commencing a proceeding in California or California Courts." Emard represented in its points and authorities in opposition to the motion to dismiss that it had "already made a mediation demand, and even after that demand was rejected, offered to stipulate to stay the action to conduct mediation." Emard's counsel stated in his declaration that (1) he served a mediation demand on Templeton on February 8, 2006; (2) he received correspondence from Templeton's counsel on February 22, 2006, "indicating [an] unwillingness to mediate in California"; (3) he mailed Templeton's counsel a letter on February 23, 2006, "outlining the requirement of CCP § 410.42 and once again demanding that Templeton submit to mediation"; and (4) on February 28, 2006, he received correspondence from Templeton's counsel "once again rejecting the media-tion demand." Emard's counsel stated he had personally spoken with petition-

---

[3] Whether petitioners Carefree Natomas Limited Partnership; Carefree Natomas, LP; and CALGP Corporation are third party beneficiaries under the contract between Emard and Templeton was not determined by the trial court or briefed on appeal. Thus we express no opinion on this issue.

ers' counsel on "numerous occasions offering to stay this matter and proceed with mediation or arbitration within the State of California."

Petitioners did not dispute Emard's account of the facts surrounding its demand and Templeton's refusal to conduct mediation in California. Instead, petitioners responded that the FAA preempted section 410.42 and the express provisions of the subcontract agreement applied. Petitioners urged the court to dismiss Emard's complaint in its entirety "because the parties have contractually agreed to resolve their disputes in an alternate out-of-state forum."

The court rejected the petitioners' argument. Its tentative ruling read in part: "At issue initially is mediation, not arbitration. So, even if the FAA would trump section 410.42, it would not apply to mediation. Further, [Templeton's] failure to respond to [Emard's] mediation request, as required by paragraph 11.3.1, means that the matter cannot go to arbitration. 'Mediation is an express condition precedent to the hearing of any arbitration demanded under this Article.' Id. Thus, having failed to mediate neither party may request arbitration. . . ."

Following the hearing on petitioners' motion to dismiss, the court took the matter under submission. It affirmed the tentative ruling with the following modification: "At [the] hearing, [Templeton] argued that CCP section 410.42 does not apply to mediation. Under subdivision (a) of that statute a 'provision which purports to require any dispute between the parties to be litigated, arbitrated, or otherwise determined outside' of California is unenforceable. According to [Templeton], mediation need not always 'determine' a dispute. Yet a dispute might be 'determined' by mediation. The statute does not require more. Tellingly, [Templeton] failed to suggest a meaning for the words 'otherwise determined' if not mediation. They must mean something, otherwise they are mere surplusage. The court, of course, must avoid such an interpretation. *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 249 [127 Cal.Rptr.2d 177, 57 P.3d 654]. [¶] Furthermore, section 410.42 also renders unenforceable any provision which purports to preclude a party from 'obtaining a judgment or other resolution in this state or the courts of this state.' Subdivision (b). Thus, the mediation requirement, which [Emard] attempted to fulfill, did not preclude it from filing this lawsuit prior to seeking mediation. [¶] Having determined CCP section 410.42 applies to the parties' agreement to mediate, the court need not address the issue of arbitration. . . ."

## DISCUSSION

### I

### *Standard of Review*

■ A petition for writ of mandate is the proper method to challenge an order denying a motion to dismiss based on inconvenient forum. (See *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 493 [131 Cal.Rptr. 374, 551 P.2d 1206].) Because the court's ruling involves interpretation of a statute and a written contract, both questions of law, and the circumstances surrounding the petitioners' refusal to mediate in California are undisputed, we review the ruling de novo. (*Hunt v. Superior Court* (2000) 81 Cal.App.4th 901, 905 [97 Cal.Rptr.2d 215].)

### II

### *Introduction*

We begin by clarifying the issues properly before us. Relying on the language of the subcontract agreement and section 410.42, the court ruled: (1) mediation is a condition precedent to arbitration; (2) petitioners failed to mediate when given the opportunity; (3) having failed to mediate, neither party may request arbitration; and (4) the mediation requirement did not preclude Emard from filing a lawsuit prior to seeking mediation. Given this resolution of the legal issues, the court expressly declined to address the question of arbitration.

Petitioners raise three claims of error in their petition for writ of mandate. First, they argue the court abused its discretion by voiding the parties' mediation agreement pursuant to section 410.42. The success of this argument turns on whether the phrase "otherwise determined" refers to mediation.

Second, petitioners contend that even if section 410.42 applies to mediation, the court erred in refusing to find that Emard failed to arbitrate the dispute between the parties in Nevada as required by the subcontract agreement. Resolution of this issue requires review of the law regarding severance and interpretation of the language of the subcontract agreement.

Third, petitioners maintain the court erred in failing to find that the FAA preempts section 410.42. This issue arises only if one or both of petitioners' two previous arguments are correct.

## III

### *Does Section 410.42 Apply to Mediation?*

■ As we explained, section 410.42 renders void and unenforceable a provision in a construction contract "which purports to require any dispute between the parties to be litigated, arbitrated, or *otherwise determined* outside this state." (§ 410.42, subd. (a), italics added.)

Petitioners argued at the hearing on their motion to dismiss that the statute did not apply to agreements requiring a party to mediate because mediation "simply means two parties are going to get together to try to resolve the problem." According to petitioners, "[m]ediation in no manner assures any party that there will be a determination. In fact, most mediations fail." As the trial court observed, petitioners failed to suggest a meaning for the phrase "otherwise determined" if not mediation. Citing legislative history, they now assert in the replication in support of their writ petition that the Legislature did not intend the phrase "otherwise determined" to apply to nonbinding mediation agreements. Petitioners' arguments are unconvincing.

■ "The objective of statutory construction is to determine the intent of the enacting body so that the law may receive the interpretation that best effectuates that intent. [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and *should be construed in their statutory context.*' (*Ibid.*) If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls. [Citation.]" (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233], italics added.) In addition, we must avoid a statutory construction that renders some words surplusage. (*Valley Circle Estates v. VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 610 [189 Cal.Rptr. 871, 659 P.2d 1160].)

■ The court in *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298], emphasized the importance of the statutory language and cautioned against placing too much reliance on legislative history in determining legislative intent. "Judges, lawyers and

laypeople all have far readier access to the actual laws enacted by the Legislature than the various and sometimes fragmentary documents shedding light on legislative intent. More significantly, it is the language of the statute itself that has successfully braved the legislative gauntlet. It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.' " (*Ibid.*) Thus, if the meaning of the statutory language is "without ambiguity, doubt, or uncertainty, then the language controls. [Citations.] There is nothing to 'interpret' or 'construe.' [Citations.]" (*Id.* at p. 1239.) Only where the meaning of the words is unclear may courts refer to legislative history. (*Ibid.*)

■ Viewing the statute as a whole, it is clear the Legislature enacted section 410.42 to prevent one party to a construction contract to be performed in California from forcing the other party to suffer the inconvenience and expense of resolving contractual disputes outside California. In light of this purpose, we read the phrase "otherwise determined" to include mediation.

■ Section 410.42, subdivision (a) mentions various ways parties to a construction contract might agree to resolve a dispute. The statute expressly refers to litigation and arbitration, one well-recognized means of alternative dispute resolution. (See 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, §§ 468, 484, pp. 899–900, 912–914.) However, " '[a]lternative dispute resolution' (ADR) refers to a variety of procedures used to resolve controversies' in lieu of the customary court trial. [¶] . . . [¶] At one end of the ADR spectrum is simple negotiation, where parties to a controversy discuss their concerns in an attempt to reach a mutually satisfying solution. [Citation.] At the opposite end, the same controversy could be resolved by an evidentiary hearing before a private judge . . . . [Citation.] The single characteristic common to these procedures is that they offer a complete or partial alternative to the traditional court system." (*Id.* at pp. 899–900.) As a practical matter, some ADR procedures lead to a final resolution and some do not. Mediation, although not always successful in resolving a dispute, is a procedure commonly used for ADR. (See 6 Witkin, *supra*, § 473, p. 904.) In this context, the phrase "otherwise determined" must be read to include mediation.

Even if we were to decide the phrase "otherwise determined" is ambiguous, and referred to the legislative history of section 410.42, our conclusion would be the same. In this instance, the legislative materials are consistent with the intent we gleaned from the language of the statute.

"According to the author, out-of-state general contractors often will contract with California subcontractors to perform work on California projects. However, these contracts often require that all contract disputes be settled in the general contractor's home state. The contract provision 'places the California subcontractors at a substantial disadvantage because they may not be knowledgeable about the laws in the other state.' Further, the author contends that these provisions deny the subcontractors the benefit and protection of certain 'California laws such as the prompt pay laws.' [¶] This bill, it is argued, will provide California subcontractors with the protection of California courts and law to which they are entitled." (Assem. Com. on Judiciary, 3d reading analysis of Assem. Bill No. 1051 (1991–1992 Reg. Sess.) as amended May 1, 1991, pp. 1–2.) The American Subcontractors Association, the sponsor of the bill, and other proponents of the bill "generally argue[d] that large out-of-state general contractors have an unfair bargaining advantage when negotiating with California subcontractors. This advantage, they argue, is evident when the subcontractors are forced to sign contract provisions that waive their right to have disputes resolved in California or lose the contract. Further, they argue that permitting general contractors to choose their home state as the site to resolve all contract disputes is unfair 'when all the work was done in California and all witnesses and evidence are available in this state.' They suggest that subcontractors often are forced to [forgo] attempts to resolve disputes in the general contractor's home state for economic reasons even when they have a meritorious case." (*Id.* at p. 2.) The other legislative materials included in the exhibit attached to Emard's return to the petition for writ of mandate echo the same theme. There is no suggestion in these materials that the Legislature intended to protect subcontractors from the inconvenience and expense of engaging in some types of out-of-state alternative dispute resolution and not others.

Accordingly, we conclude section 410.42 applies and voids the subcontract agreement to the extent it requires that "any mediation . . . shall be held in Las Vegas, Nevada."

## IV

### *Must Emard Arbitrate the Dispute in Nevada?*

Petitioners argue the arbitration provisions of paragraph 11.3.2 of the subcontract agreement are severable and enforceable even if the out-of-state mediation provisions of paragraphs 11.3.1 and 11.3.3 are void under section 410.42. They contend Emard is still obligated to arbitrate in Nevada due to its failure to satisfy the contractual mediation requirements. We disagree with petitioners' reading of the subcontract agreement and the consequences of their refusal to mediate in California.

■ We begin by rejecting petitioners' suggestion that section 410.42 voids the mediation provisions in their entirety. " 'Two reasons for severing or restricting *illegal terms* rather than voiding the entire contract appear implicit in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.] The overarching inquiry is whether " 'the interests of justice . . . would be furthered' " by severance. [Citation.] Moreover, courts must have the *capacity* to cure the unlawful contract through severance or restriction of the offending clause, which . . . is not invariably the case.' (*Armendariz* [*v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83,] 123–124 [99 Cal.Rptr.2d 745, 6 P.3d 669] [(*Armendariz*)].) Accordingly, '[c]ourts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.' (*Id.* at p. 124.)" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1074 [130 Cal.Rptr.2d 892, 63 P.3d 979], some italics added.)

Here, the interests of justice are best served by severing only the portion of paragraph 11.3.3 that violates section 410.42—the terms that state mediation must take place in Nevada. That provision is clearly collateral to the main purpose of the subcontract agreement and is easily severed from the remainder of the provisions that deal with mediation. (*Armendariz, supra,* 24 Cal.4th at p. 124.) In addition, a decision to sever the requirement that mediation take place in Nevada prevents petitioners from "gaining undeserved benefit" as a

result of voiding all the mediation provisions in favor of the arbitration requirements, "particularly when there has been full or partial performance of the contract." (*Id.* at pp. 123–124.)

Next, we address the question whether Emard is required to *arbitrate* its dispute in Nevada once the unlawful portion of the mediation provisions is severed from the subcontract agreement. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "Where the language of a contract is clear and not absurd, it will be followed. [Citations.] But if the meaning is uncertain, certain general rules of interpretation are to be applied. [Citations.]" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 741, p. 827, citing Civ. Code, §§ 1637, 1638.)

Paragraph 11.3.1 states that any dispute between the contractor and subcontractor "shall be submitted to mediation . . . before resorting to Arbitration or litigation as discussed below . . . ." Either party may seek mediation. Paragraph 11.3.1 provides that "[m]ediation is an express condition precedent to the hearing of any arbitration . . . ." The contract does not state that mediation is a condition precedent to litigation. The only contractual limitation is that "[i]f either party resorts to arbitration or court action . . . without first *attempting* to resolve the matter through mediation, then in the discretion of the Arbitrator or Judge, that party shall not be entitled to recover their attorney's fees and costs . . . ." (Italics added.)

Emard attempted to resolve its dispute with petitioners through mediation in California. Petitioners insisted that the matter be mediated in Nevada even after Emard mentioned section 410.42 in a letter to the American Arbitration Association and copied to petitioners' counsel. The record supports the trial court's finding, not disputed by the parties, that petitioners failed to respond to Emard's request for mediation when given the opportunity. Thus, under the express terms of paragraph 11.3.1, neither party could request, or force, arbitration in Nevada or anywhere else.

We also reject petitioners' claim Emard failed to timely satisfy the mediation requirements by seeking mediation only after it filed its complaint in superior court. In light of Emard's offer to stay court proceedings in order to proceed with mediation or arbitration in California, we cannot say Emard violated the terms of the subcontract agreement.

## DISPOSITION

The order is affirmed. Emard shall recover its costs pursuant to California Rules of Court, rule 27(a).

Nicholson, Acting P. J., and Hull, J., concurred.

Petitioners' petition for review by the Supreme Court was denied February 21, 2007, S148549. Kennard, J., was of the opinion that the petition should be granted.