[No. B068332. Second Dist., Div. Six. Jan. 26, 1994.]

UNION ASPHALT, INC., et al., Plaintiffs and Appellants, v.
PLANET INSURANCE COMPANY, Defendant and Respondent.

## Counsel

Gerald C. Weaver, Donley & McKenzie and William H. McKenzie for Plaintiffs and Appellants.

Knecht, Haley, Lawrence & Smith, Anne M. Bevington and John L. Condrey for Defendant and Respondent.

## Opinion

**GILBERT, Acting P. J.**—Here we hold that Civil Code[1] section 3267 does not preclude third tier subcontractors and material suppliers from a right of action on a payment bond.

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

## FACTS

Riverglen Investments, Ltd., sought to develop a subdivision in the City of El Paso de Robles (the City). The subdivision agreement with the City required the construction of certain offsite public improvements for which Riverglen was required to provide performance and payment bonds. Planet Insurance Company provided the bonds. The bonds were substantially in the form set forth in Government Code sections 66499.1 and 66499.2.[2]

Riverglen entered into a contract with Spiess Construction to construct the improvements. Spiess subcontracted 100 percent of the work to Swift Tectonics. Swift subcontracted portions of the work to Union Asphalt and contracted for materials with Southern Pacific Milling and Westburn. Riverglen stopped paying its contractors in 1990.

Union, Southern Pacific and Westburn filed complaints alleging they were entitled to recover under the bond. Planet moved for and obtained summary judgment in its favor on the ground that third tier subcontractors were not entitled to recover under Planet's bond.

Union and Southern Pacific appeal. We reverse. Southern Pacific and Union raise the same contentions. We refer to both appellants as Union for convenience.

## DISCUSSION

■ Union contends that the express language of the bond shows it runs in favor of Union. Union cites a portion of the bond stating Planet agrees to be bound to ". . . all contractors, subcontractors, laborers, materialmen and other persons employed in the performance of the aforesaid agreement [to install public improvements]. . . ."

Planet, on the other hand, relies on a different portion of the bond which provides, "[i]t is hereby expressly stipulated and agreed that this bond shall inure to the benefit of any and all persons, companies and corporations entitled to file claims under Title 15 (Commencing with Section 3082) . . . of the Civil Code. . . ."

This leads to to an obvious question. Is there something in title 15 beginning with section 3082 that limits the rights of any subcontractor or supplier to bring an action for recovery on a bond?

---

[2]These sections deal with forms for surety bonds issued pursuant to the Subdivision Map Act.

Planet says yes there is, section 3267 which is part of title 15. That section provides: "Nothing contained in this title shall be construed to give to any person any right of action on any original contractor's private or public work payment bond described in Chapter 6 (commencing with Section 3235) or Chapter 7 (commencing with Section 3247), unless the work forming the basis for his claim was performed by such person for the principal on such payment bond, or one of his subcontractors, pursuant to the contract between the original contractor and the owner. [¶] Nothing in this section shall affect the stop notice rights of, and relative priorities among, architects, registered engineers, or licensed land surveyors and holders of secured interests on the land."

Planet argues the section limits claims on its bond to first tier material suppliers and second tier subcontractors. Because Riverglen was the principal on the bond and the City's prime contractor for the work of public improvement, Union and Southern Pacific would be third tier subcontractors after Spiess and Swift Tectonics.

No case interprets section 3267, but Planet cites California Surety and Fidelity Bond Practice (Cont.Ed.Bar Supp. 1992) section 8.11, page 57-58. There the author states: "Civil Code § 3267 limits coverage of the payment bond to claimants who perform work *for the principal on such payment bond* or for one of the principal's *subcontractors*. This language excludes coverage for a supplier or subcontractor who performs for a second-tier subcontractor; the coverage for mechanics' liens, however, has no limitation on the level of the subcontract as long as the claimant supplies to the contractor or subcontractor and not to another materialman."

We are puzzled by this interpretation. There appears no good reason why our Legislature would cut off suppliers and subcontractors at the second tier for payment bonds, but give suppliers and subcontractors of any tier the right to a mechanic's lien. It would be unreasonable to draw such an arbitrary line.

In interpreting statutes, we must presume our Legislature intended reasonable results. Where there are two possible constructions, one leading to mischief or absurdity and the other to a result consistent with justice and common sense, the choice is self-evident. (See *Shoemaker* v. *Myers* (1992) 2 Cal.App.4th 1407, 1424 [4 Cal.Rptr.2d 203].)

Further, an interpretation of section 3267 that cuts off bond claimants at the second tier appears to conflict with the provisions of section 3248. Subdivision (c) of section 3248 provides that a payment bond approved for public works must "[b]y its terms inure to the benefit of any of the persons

named in Section 3181 so as to give a right of action to such persons or their assigns in any suit brought upon the bond." Section 3181 provides in part, "[e]xcept for an original contractor, any person mentioned in Section 3110 . . . or furnishing provisions, provender, or other supplies, may serve a stop notice upon the public entity. . . ."

Section 3110 lists all those who have mechanic's lien rights, including materialmen and subcontractors. Section 3110 does not limit those who have lien rights to second tier materialmen and subcontractors. Thus, the only reasonable construction of section 3248, subdivision (c) is that it requires public works payment bonds to inure to the benefit of materialmen and subcontractors of any tier.

If section 3267 were intended to limit the beneficiaries specified in section 3248, subdivision (c), one would expect to find some reference in one section to the other, or at least some language in section 3248, subdivision (c) parallel to what Planet claims is the limiting language of section 3267.

In fact, the bond itself, which is substantially in the form provided in Government Code section 66499.2, states it inures to the benefit of "all . . . subcontractors . . . [and] materialmen. . . ." We presume Government Code section 66499.2 was drafted with section 3267 in mind. If the Legislature did not mean to cover all subcontractors and materialmen, it would have included in the section something more specific than a general reference to title 15, a reference which is not even stated as an exception to coverage.

Section 3104 defines a subcontractor as "a contractor who has no direct contractual relationship with the owner." Under this definition, subcontractors at every level may be considered to be the bond principal's subcontractors. Thus, the phrase "one of his [the principal's] subcontractors" as used in section 3267, does not preclude claims by material suppliers or subcontractors beyond the second tier.

What then is the purpose of section 3267? The introductory clause, "[n]othing contained in this title shall be construed," usually indicates that the statute is meant to clarify a point rather than to create substantive law. We believe section 3267 was intended to make certain that persons who do not perform ". . . pursuant to the [construction] contract . . ." have no right of action on the bond.

Thus, for example, architects, engineers and land surveyors who perform work prior to or otherwise outside the scope of the construction contract

have no claim on the contract's payment bond. Similarly, holders of secured interests on the land who neither provide material nor perform work in furtherance of the construction contract have no right of action on the bond.

Planet requests that we take judicial notice of section 3267's legislative history. Planet concedes that our interpretation of 3267 corresponds with the original version of the Senate bill, but argues that amendments changed the purpose of the section as it was enacted.

The original bill specified that an "architect registered engineer, or licensed land surveyor" had no claim on the bond unless the work was performed for the bond principal or one of his subcontractors. (Sen. Bill No. 229 (1971 Reg. Sess) § 1.) The bill also stated that the act was not intended to change substantive law. (*Id.* at § 3.)

The substitution of "any person" for the more specific "architect, registered engineer, or licensed land surveyor" does not signal a change in the purpose of the bill. The substitution simply recognizes that there is no reason to allow anyone who does not perform work under the construction contract to recover on the bond.

Planet points out, however, that the bill was also amended to eliminate the provision that it was not intended to change substantive law. That is insufficient to convince us the Legislature intended to change the purpose of the bill from one limiting recovery to those who worked under the construction contract to one limiting recovery to first and second tier subcontractors.

Planet also points to a legislative counsel's opinion on section 3267 that provides in part: "A *subcontractor* is a contractor who has no direct contractual relationship with the owner (Sec. 3104). The term 'subcontractor' embraces all persons who agree with the original contractor to furnish the material and construct for him some part of the structure which the original contractor has agreed to erect for the owner. (*Benson Elec. Co.* v. *Hale Bros. Assoc., Inc.*, 246 Cal.App.2d 686, 690 [55 Cal.Rptr. 73]; *Thiesen* v. *County of Los Angeles*, 54 Cal.2d 170, 183 [5 Cal.Rptr. 161, 352 P.2d 529])." (Ops. Cal. Legis. Counsel, No. 20682 (Oct. 27, 1971) Actions on Payment Bonds (Sen. Bill No. 229) 5 Sen. J. (1971 Reg. Sess.) p. 8141, italics added.)

That the definition of a subcontractor "embraces" all persons who agree with the original contractor, does not mean other contractors are excluded. Neither the opinion nor the cases cited therein stand for the proposition that only those who agree with the original contractor are subcontractors. The plain language of section 3104, defining subcontractor, contains no such limitation.

Finally, Planet suggests that California public work bond statutes are similar to the federal Miller Act (40 U.S.C. § 270 et seq.), and should be interpreted the same way. It points out the United States Supreme Court has interpreted section 270b of the Miller Act as cutting off payment bond claims at the second tier. (*Clifford F. MacEvoy Co.* v. *United States* (1944) 322 U.S. 102 [88 L.Ed. 1163, 64 S.Ct. 890].)

Section 270b of the Miller Act provides in part: "Every person who has furnished labor or material in the prosecution of the work provided for in such contract, . . . shall have the right to sue on such payment bond . . . . *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days. . . ." (40 U.S.C. § 270b.)

If the interpretation of section 270b were a matter of first impression, we would conclude it simply sets forth a notice requirement for any subcontractor having no direct contractual relationship with the original contractor. Under our reading, section 270b would not limit recovery for subcontractors of any tier as long as notice was given. It would be the federal equivalent of California Civil Code sections 3091[2] and 3252.[3]

The United States Supreme Court, however, interpreted the section as limiting payment bond claimants at the second tier by adopting a narrow definition of subcontractor. The court noted that the Miller Act does not define subcontractor. (*Clifford F. MacEvoy Co.* v. *United States, supra,* 322 U.S. at p. 108 [88 L.Ed. at p. 1168].) It rejected a broad definition of subcontractor as ". . . anyone who has a contract to furnish labor or material to the prime contractor." (*Ibid.*) Instead it adopted a narrower definition as ". . . one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract. . . ." (*Id.* at p. 109 [88 L.Ed. at p. 1168].)

We are unconvinced the United States Supreme Court's interpretation of the Miller Act should be applied to California statutes. Unlike the Miller

---

[2]Section 3091 provides in part: " 'Ninety-day public works preliminary bond notice' " means a notice which must be given by any claimant other than one of the following:

"(a) A claimant who performs actual labor for wages or an express trust fund as described in Section 3111.

"(b) A claimant who has a direct contractual relationship with the original contractor.

"The notice is required only on public works, and is a necessary prerequisite to enforcement of a claim on a payment bond. . . ."

[3]Section 3252 provides: "In order to enforce a claim upon any payment bond given in connection with a public work, a claimant must give the 90-day public works preliminary bond notice as provided in Section 3091."

Act, California Civil Code section 3104 expressly defines the term subcontractor. Unlike the definition given to the term in *MacEvoy*, section 3104 defines subcontractor broadly, without limitation as to tier.

The judgment is reversed. Appellants are awarded costs on appeal.

Yegan, J., and Willard, J.,* concurred.

---

*Retired judge of the Ventura Superior Court sitting under assignment by the Chairperson of the Judicial Council.