Filed 1/5/24  Moorefield Construction v. Cooley Construction CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MOOREFIELD CONSTRUCTION, INC., | |
| Plaintiff and Appellant, | G062153 |
| v. | (Super. Ct. No. 30-2020-01130607) |
| COOLEY CONSTRUCTION, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed.

Mahoney & Soll and Richard A. Soll for Plaintiff and Appellant.

Law Offices of Gregory J. Hout, Gregory J. Hout; Arias & Lockwood and Christopher D. Lockwood for Defendant and Respondent.

\*          \*          \*

General contractor Moorefield Construction Inc. (Moorefield) hired subcontractor Cooley Construction Inc. (Cooley) to perform all the grading work on a construction project. Unforeseen issues arose, and the parties agreed Moorefield would hire a nonparty subcontractor to perform grading on the project in Cooley's place. According to Moorefield, the nonparty subcontractor was only a temporary replacement. Cooley, however, believed the parties had agreed to terminate the grading subcontract and fully replace Cooley on the project with the new subcontractor. Moorefield later asked Cooley to return to the project and complete grading, but Cooley refused. Moorefield then sued Cooley for breach of contract for failing to complete the grading work. Cooley cross-complained based on Moorefield's failure to make a retention payment owed under the grading subcontract. The trial court entered judgment in favor of Cooley on both the complaint and cross-complaint. We find substantial evidence supports the judgment and affirm.

# I

## FACTS AND PROCEDURAL HISTORY

### A. *The Construction Project*

Moorefield was the general contractor on a shopping center project in Perris (the project) owned by Nuevo Perris, LLC (the owner). It agreed to build the project on a cost-plus basis not to exceed $19,128,631.[1] Moorefield subcontracted with Cooley to perform all the grading and demolition work on the project (the subcontract). Under the subcontract, it could terminate Cooley's work on the project at any time and for any reason by written notice.

---

[1] Generally, "[i]n a 'cost-plus' contract, the contractor is paid the cost of its materials, labor, and overhead 'plus' either a fixed fee or a percentage of the cost of materials, labor, and overhead as 'profit.' It allows the contractor to pass-through to the owner the actual cost of construction while guaranteeing the contractor its profit margin." (6 Miller & Starr, Cal. Real Estate Forms (2d ed. 2023) § 4:1.)

Moorefield agreed to pay Cooley $585,000 for its work. The subcontract also specified that a percentage of this amount would be held as retention during construction. Moorefield would make the final retention payment to Cooley (the retention payment) upon the project's completion and after Cooley had submitted "all Release of Liens covering [its] work." Several other paragraphs in the subcontract reiterate that Moorefield was not required to make the retention payment until Cooley gave the required releases.

As initially planned, Cooley's work on the project was to occur in three separate mobilizations. Cooley would demobilize and pull off the job between each one. The initial schedule called for Cooley to be completely finished with the three mobilizations by May 30, 2019.

Unforeseen events altered the parties' initial schedule. As a result, Cooley had to perform work on the project in smaller sections. It had already completed five mobilizations by early May 2019, with about 20 percent of the grading work left to complete.

Due to these delays, Moorefield's project manager, Ted Johnson, spoke by phone with Cooley's project manager, Michael Patten, on May 9, 2019. On the call, they discussed the impact of the delays and agreed it would be better for Moorefield to bring in another grading subcontractor, Novi Environmental (Novi), to continue the grading work on a time and materials basis. Cooley agreed to send over a credit proposal for the work it had not completed.

On May 10, 2019, Patten e-mailed Johnson a summary of their phone call from the prior day. The e-mail explained how various unforeseen circumstances had altered the original grading plan and cost schedule. It explained, "To minimize these time and cost impacts, Moorefield Construction has requested that Cooley Construction provide a cost proposal to credit back the uncompleted work associated with their subcontract. This is so Moorefield Construction can address the remaining grading with

3

their own team [(i.e., Novi]), which will work better with the current construction schedule. This decision is being made solely for the betterment of the project and does not reflect negatively towards Cooley Construction, for lack of performance or quality."

Patten's e-mail continued, "We are compiling our records for all remaining billable items for the work completed. We are also generating a list of incomplete items that will be included in the proposal for reduction in scope. . . . [¶] Once all items are deemed acceptable by both parties, we will issue one final billing to reflect all outstanding payments to include retention, which is payable upon receipt. [¶] We hope the project finishes well for your team and we look forward to work with Moorefield Construction on another project in the near future."

Johnson replied the same day, writing, "Well stated and I agree with the status of the project. I will add there is no lack of effort on Cooley Construction but rather several unforeseen schedule changes due to delays in approvals from [local utility providers]. Please provide a comprehensive breakdown for the remaining work scope and cost."[2]

Novi commenced grading work on the project on May 10, 2019. The parties' stories diverge from here. Moorefield claims Cooley was still under contract. Novi was only a temporary fill-in while Cooley was unavailable, and it expected Cooley to return to the project to complete grading. In contrast, Cooley maintains the parties agreed to terminate the subcontract and completely replace Cooley on the project with Novi.

In June 2019, Moorefield asked Cooley to return to the project to complete grading. Cooley replied that the subcontract had been cancelled on May 10, 2019, and all

---

[2] Johnson and Patten subsequently e-mailed back and forth regarding the amount of the credit Cooley would give Moorefield for the reduced scope of work. While their conversations were fruitful, it does not appear the parties ever agreed on the final credit amount.

4

its grading crews were committed to other jobs and could not return. On June 18, 2019, Moorefield sent Cooley a notice demanding it return to the project to complete grading within 48 hours. Cooley refused, and Moorefield used Novi to finish the grading work. Evidence in the record shows Moorefield paid Cooley $449,408 and Novi $560,000 for their work on the project.

Moorefield completed the entire project in November 2019. It billed the owner a total of $18,228,457, which was $900,174 less than the agreed-upon maximum price. However, Moorefield's grading and demolitions costs were $362,241 overbudget. The budget to complete grading and demolition was $680,000, but the actual cost was $1,042,241.

In December 2019, Cooley billed Moorefield for the retention payment in the amount of $51,049.68. Moorefield did not pay.


*B. The Lawsuits*

In February 2020, Moorefield sued Cooley for breach of contract, among other claims, on the ground it had failed to perform all the grading work on the project. Cooley cross-complained for breach of contract based on Moorefield's failure to make the retention payment.

Moorefield filed a motion to appoint a referee (the Referee) under Code of Civil Procedure section 639, which the court granted.

During discovery, Moorefield admitted the owner had paid its full bill for the project ($18,228,457), which included all of Moorefield's grading and demolition costs ($1,042,241). After learning this, Cooley sought the Referee's permission to move for summary judgment on grounds Moorefield had not been damaged since all its grading and demolition costs had been paid.

In response, Moorefield asked for leave to amend the complaint. Its proposed amended complaint (FAC) asserted a single cause of action for breach of

contract against Cooley. It alleged Cooley had breached the subcontract by "abandon[ing] the project and never complet[ing] all the work required under the Subcontract." As a result of the alleged breach, Moorefield was required to hire Novi to complete the demolition and grading work, which "resulted in a cost overrun of $362,241 . . . on the project."

The FAC further clarified that while Moorefield had not been damaged, it was bringing a pass-through claim against Cooley on the owner's behalf.[3] It alleged, "[t]he owner paid [Moorefield] for the cost overrun but has demanded that [Moorefield] seek reimbursement of $362,241 from COOLEY for the damage that COOLEY caused by abandoning the project. The owner cannot sue COOLEY directly because the owner is not in privity of contract with COOLEY." The FAC continued, "[t]o resolve the dispute, [Moorefield] agreed to prosecute this lawsuit against COOLEY on a pass-through basis, and that any amount that [Moorefield] recovers from COOLEY will be paid to the owner, less costs and expenses." The FAC sought $362,241 in damages against Cooley on the owner's behalf.

Cooley opposed the motion for leave to amend. Among other things, it asserted Moorefield had incurred no damages and could not bring a pass-through claim on the owner's behalf as a matter of law.

The Referee granted Moorefield's motion for leave to amend and deemed the FAC filed and served. But it instructed the parties that "[t]he issue of the 'pass-

---

[3] Pass-through claims are normally asserted by a subcontractor against an owner. The subcontractor cannot sue the owner directly because they are not in privity of contract. The subcontractor's contract is with the general contractor. "However, California law . . . provid[es] that a subcontractor's claim 'passes through' the general contractor to the owner. [Citation.] Consequently, by contract or settlement agreement, a general contractor and a subcontractor can agree that the contractor will pass through the subcontractor's claims against the contractor to the owner." (*Sehulster Tunnels/Pre-Con v. Traylor Brothers, Inc./Obayashi Corp.* (2003) 111 Cal.App.4th 1328, 1348.) There does not appear to be any California authority on whether a contractor can bring a pass-through claim against a subcontractor on an owner's behalf.

through' claim that is addressed in the moving and opposing papers may be pursued as a Motion in Limine." Neither party objected to this procedure.

Per the Referee's order, Cooley reasserted its arguments in a motion in limine that sought to bar Moorefield from presenting any evidence on its breach of contract claim. The Referee granted the motion. He found that "[b]ased on the lack of any resultant damage to Moorefield, evidence of a breach of contract by Cooley is irrelevant as to the [FAC]. Therefore, Moorefield is also prohibited from presenting any evidence on its [FAC] of a breach of contract by Cooley." Cooley then moved for judgment on the FAC under Code of Civil Procedure section 631.8, which the Referee granted.

The case went to trial on Cooley's cross-complaint in October 2022. In its trial brief, Moorefield asserted Cooley had forfeited the retention payment by (1) walking off the job and breaching the subcontract (i.e., the same theory as the FAC's breach of contract claim), and (2) failing to submit its lien releases as required by the subcontract. As to the second argument, Cooley claimed it was unaware any lien releases were outstanding until it received Moorefield's trial brief. It promptly sent three lien releases to Moorefield a few days before trial. During trial, Moorefield pivoted and asserted Cooley's failure to timely submit the releases led to forfeiture of the retention payment.

After trial, the Referee issued a statement of decision finding in favor of Cooley. Among other things, the Referee found Cooley did not breach the subcontract because the parties had mutually terminated it in May 2019. The e-mail exchanges between Patten and Johnson on May 10, 2019, satisfied the subcontract's written notice requirement for termination. The Referee also found Moorefield suffered no prejudice by Cooley's delay in submitting the lien releases. He explained, Moorefield "held the retention after being paid by the owner for over two years; . . . it never advised [Cooley] that the project was complete and accepted by the owner . . . or that [Cooley] should make a request for payment."

7

Based on the Referee's findings, the court entered judgment in favor of Cooley in the total amount of $185,204.34, comprised of (1) $61,088.69 for unpaid work, including the retention payment of $51,049.68, (2) $2,884.75 in prejudgment interest, (3) $36,723.40 in costs, and (4) $84,507.50 in attorney fees.[4]

Moorefield makes four arguments on appeal. First, the Referee erred by granting Cooley's motion in limine, which barred Moorefield from presenting evidence of its pass-through claim for breach of contract. Second, the Referee's finding that Cooley and Moorefield mutually terminated the subcontract is not supported by sufficient evidence. Third, Cooley was not entitled to the retention payment because it failed to timely submit the lien releases. Finally, if we reverse the judgment in favor of Cooley on the merits, we should also reverse the attorney fees and costs award.

II

DISCUSSION

*A. The Subcontract's Termination*

We start by analyzing Moorefield's claim there is insufficient evidence to support the Referee's finding that the parties mutually terminated the subcontract. If this ruling is affirmed, then Moorefield's challenge to the Referee's motion in limine ruling is moot. Moorefield seeks reversal of the motion in limine ruling so it can present evidence on its breach of contract claim against Cooley. But Moorefield's breach of contract claim involves the same issue as its defense to Cooley's claim for the retention payment: Did Cooley abandon the project in May 2019 and breach the subcontract? If the subcontract was mutually terminated, then Cooley did not breach it. Thus, any alleged error in

---

[4] The judgment states the total amount is $185,204.32, which appears to be a typo.

granting the motion in limine would be harmless since Moorefield would have lost on its breach of contract claim even if the motion had been denied.[5]

As both parties agree, we apply the substantial evidence standard to the Referee's finding that the subcontract was mutually terminated. (See *Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 771-772; *DeLeon v. Verizon Wireless, LLC* (2012) 207 Cal.App.4th 800, 813.) Under this standard, "'[o]ur review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding. [Citations.] In so reviewing, all conflicts must be resolved in favor of [the prevailing party] and all legitimate and reasonable inferences must be indulged to uphold the finding.'" (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1472.) "'If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.'" (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143, italics omitted.)

Moorefield appears to argue there is no evidence it agreed to terminate the subcontract in May 2019. Rather, it believes the evidence only shows Cooley had a subjective belief the subcontract had been cancelled. We disagree. There is sufficient testimony and documents in the record to show both parties agreed to completely replace Cooley on the project and terminate the subcontract.

To begin, Patten (of Cooley) testified at trial that he spoke with Johnson (of Moorefield) on May 9, 2019, and they agreed to completely replace Cooley on the project with Novi due to unforeseen scheduling issues. In other words, there was evidence both

---

[5] Moorefield's opening brief also suggests Cooley breached the subcontract by performing defective work. But it has not cited anything in the record showing it ever intended to pursue this theory at trial. The FAC does not allege Cooley's work was defective. Further, this theory is contradicted by Moorefield's discovery responses, which stated: "There was no problem with Cooley Construction's workmanship. The problem is that Cooley Construction refused to return to the jobsite to complete [the subcontract] and abandon[ed] the job."

parties agreed to terminate the subcontract so Novi could finish the grading on the project.

The e-mails exchanged between Patten and Johnson on May 10, 2019, provide further evidence of such an agreement. Patten wrote that Johnson had requested a credit from Cooley "so Moorfield [*sic*] . . . *can address the remaining grading with their own team* [(i.e., Novi)], which will work better with the current construction schedule." (Italics added.) The e-mail explained that once the scope of remaining work was agreed upon, Cooley would "issue one *final* billing to reflect all outstanding payments to include retention, which is payable upon receipt." (Italics added.) The e-mail closed with Patten stating, "We hope the project finishes well for your team and we look forward to work with Moorefield Construction *on another project in the near future*." (Italics added.)

The above portions of the e-mail indicate the parties agreed to terminate the subcontract so Novi could finish the grading work on the project. The e-mail states Moorefield would "address the *remaining* grading" with their own team. (Italics added.) The use of the word "remaining," without qualification, is evidence that Novi would finish the rest of the grading on the project and that Cooley's work was complete. Further, Cooley would issue a "final billing," implying there would be no other bills from Cooley because it was done with the project. Finally, the e-mail closes by Patten wishing Moorefield luck on the project and expressing a desire to work with Moorefield "on *another* project in the near future." (Italics added.) The closing statement again indicates Cooley's time on the project was done. There would be no need for these well wishes if there was any expectation that Cooley might return to the project in the future.

Johnson fully endorsed the above statements in his response. He replied, "Well stated and I agree with the status of the project." Johnson did not mention Cooley returning to the project in the future. Significantly, he did not question Patten's statement that Novi would "address the remaining" work on the project. Instead, his response

10

indicates he agreed with Patten's statements that Cooley's work on the project was finished. Further, to the extent his response contains any ambiguity as to whether Moorefield had agreed to terminate the subcontract, we resolve it in favor of the Referee's ruling. (*In re Marriage of Brandes*, *supra*, 239 Cal.App.4th at p. 1472.)

There is also evidence showing Moorefield agreed to terminate the subcontract in May 2019 and then tried to reverse course after its grading costs soared. Cooley's president, Benjamin Cooley, testified Johnson called him in June 2019. Johnson asked if Cooley could return and finish the project because it was costing Moorefield a lot of money to finish the grading with Novi on a time and materials basis. Benjamin Cooley refused because his teams were already committed to other projects.

Likewise, Patten sent Johnson an e-mail on June 19, 2019, stating, "Due to the significant changes, delays, and re-phasing of this project, we agreed to cancel the balance of Cooley's subcontract agreement on 10 May 2019 . . . . Since that time there has been other grader(s) who have worked at the site. Based on our agreement to cancel the remaining work, our crews are now committed to other jobs. [¶] On 13 June 2018, you contacted [Benjamin Cooley] by telephone and indicated that you now want Cooley back on the job and you have demanded that the grading be completed by the end of June. As a result of our agreement to terminate the remaining contract, it is not possible for us to return during that time frame."

In response, Moorefield argues the e-mail exchanges between the parties are insufficient to meet the subcontract's written notice requirement. Specifically, it contends that "[t]here is simply nothing in the email exchanges that say anything about Moorefield terminating the subcontract for convenience. [¶] At best, the oral and written communications between the parties amount to nothing more than an agreement to agree on a credit which is not binding."

Moorefield has not shown the Referee erred by finding the e-mails from May 10, 2019, meet the subcontract's written notice requirement. As set forth above,

11

these e-mails reflect an agreement between the parties to terminate Cooley's remaining obligations under the subcontract. The e-mails provided written notice to Cooley that the subcontract was being terminated and Novi would complete the "remaining grading" on the project. Moorefield appears to suggest the notice had to expressly state it was terminating the subcontract for convenience. But it has cited nothing in the subcontract nor any case law to support this argument.

Further, the subcontract's written notice provision appears to be for the benefit of Cooley not Moorefield. The subcontract states that upon receipt of written notice, Cooley "shall, unless the notice directs otherwise, immediately discontinue [Cooley's] work and placing of orders for materials, facilities and supplies in connection therewith, and shall, if requested, make every reasonable effort to procure cancellation of all existing orders or Contracts upon terms satisfactory to [Moorefield] . . . [or] give [Moorefield] the right to assume those obligations directly . . . . [Cooley] shall thereafter do only such work as may be necessary to preserve and protect portions of [Cooley's] work already in progress and to protect materials and equipment on the Project site or in transit thereto."

Based on this language, the subcontract requires written notice to inform Cooley of how and when to stop work on the project. Thus, the specific content of the written notice is immaterial so long as it reflects an understanding of the parties as to how and when Cooley would stop work. The May 10, 2019, e-mail exchange between Patten and Johnson fulfills these goals. As discussed above, it records the parties' written understanding that Cooley was being completely replaced on the project by Novi to complete "the remaining work" on the project.

B. The Retention Payment

Next, Moorefield argues Cooley's timely submission of the lien releases was a condition precedent to receiving the retention payment. It contends Cooley did not

12

meet this condition precedent and forfeited the retention payment because it untimely submitted the releases. Specifically, it asserts Cooley only submitted the lien releases a few days before trial, which was nearly three years after Cooley billed Moorefield for the retention payment. We find Cooley timely submitted the releases.

Moorefield's argument relies on a general provision in the subcontract stating, "Time is of the essence . . . ." It asserts this provision applies to Cooley's obligation to submit the lien releases. However, the subcontract provides no specific submission deadline for the releases. Thus, the relevant question is whether Cooley provided the lien releases within a reasonable timeframe. (Civ. Code, § 1657 ["If no time is specified for the performance of an act required to be performed, a reasonable time is allowed"]; see *Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust* (1985) 168 Cal.App.3d 818, 825–826 ["'"'[T]he intent to make a particular date, or time, 'the essence of the contract must be clearly, unequivocally and unmistakably shown by an express declaration'"'"].) "'[W]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case.'" (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30.) Finally, though the Referee did not expressly refer to reasonableness when analyzing whether the lien releases were timely submitted, we presume he knew and applied the correct law. (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103.)

Substantial evidence supports the Referee's finding Cooley provided the lien releases within a reasonable time. (See *Henry v. Sharma* (1984) 154 Cal.App.3d 665, 669-670 [applying substantial evidence standard].) In particular, there is evidence Cooley did not know any releases were missing until it received Moorefield's trial brief. The record shows Cooley provided three lien releases after receiving Moorefield's trial brief: a release for its own work and two releases from subcontractors Cooley had retained. But it had submitted the two releases from its own subcontractors in June 2019,

13

months before the project's completion. The evidence shows Cooley did not know Moorefield required the missing third release until it received the trial brief.

The record also shows Moorefield never informed Cooley the retention payment was being withheld due to a missing lien release until it filed its trial brief. And it had several chances to inform Cooley earlier. For example, Moorefield did not tell Cooley any lien releases were missing after Cooley submitted its invoice for the retention payment in December 2019. Nor did Moorefield tell Cooley any lien releases were missing after Cooley cross-complained for the retention payment in March 2020. Given this evidence, it was reasonable for Cooley to submit the missing release after it received Moorefield's trial brief. Since Cooley provided the lien release within a reasonable timeframe, Moorefield was obligated to make the retention payment.[6]

Moorefield also appears to argue it was prejudiced by Cooley's failure to submit the lien releases sooner. Moorefield claims it did not include the retention payment in its final bill to the owner because Cooley failed to timely submit the releases. Thus, Moorefield would have to pay the retention payment out-of-pocket with no reimbursement from the owner. But this argument asks us to reweigh the evidence, which we will not do when performing substantial evidence review. (*Jameson v. Five Feet Restaurant, Inc.*, *supra*, 107 Cal.App.4th at p. 143.)

## C. Attorney Fees and Costs

Since we have affirmed the judgment as to the parties' respective claims for breach of contract, we also affirm the fees and costs award.

---

[6] Because we find Cooley met the condition precedent, we do not address Moorefield's arguments that the court improperly excused the condition precedent.

14

## III

## DISPOSITION

The judgment is affirmed.  Cooley is entitled to its costs on this appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J.