Filed 11/16/23  Dashuta v. LA Stainless Kings CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LEONID DASHUTA, | B321121 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19SMCV00037) |
| v. | |
| LA STAINLESS KINGS, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Affirmed.

Law Offices of Gabor Szabo for Defendant and Appellant.

Marc J. Gedeon and Halil Hasic for Plaintiff and Respondent.

———————————————

Defendant LA Stainless Kings, Inc. (LASK) appeals from a judgment entered in favor of plaintiff Leonid Dashuta after the trial court denied LASK's petition to vacate an arbitration award and granted Dashuta's petition to confirm the arbitration award. We affirm.

## BACKGROUND

### I.    The Parties Sign an Agreement

On or about September 20, 2018, Dashuta and LASK executed the "Agreement" at issue in this case. The Agreement provided that LASK, a concession truck designer and manufacturer, would manufacture a food truck for Dashuta, doing business as Magnifico Pizzeria; and Dashuta would pay LASK $95,350 for the materials and labor. LASK was bound under the Agreement to manufacture the food truck "for the agreed upon price."

Per the terms of the Agreement, Dashuta paid LASK $10,000 upon the signing of the Agreement. Dashuta's next payment of $25,350 was due five weeks later. On October 8, 2018, Dashuta paid $13,350 and agreed to purchase the pizza oven for the food truck, reducing the amount it owed LASK under the Agreement by $12,000 (i.e., the cost specified in the Agreement for purchase of the pizza oven). The balance under the Agreement was due when the "Health Department approves the truck at final inspection."

The parties disagreed as to who was obligated under the Agreement to procure the shell vehicle that LASK would use to manufacture the food truck. The Agreement stated that $13,000 of the price Dashuta would pay LASK for the manufacture of the food truck was allocated specifically for purchase of a "Used Step Van 22' Cargo." (Agreement, ¶ 7.) The Agreement listed one of

2

LASK's "duties" as: "to assist CUSTOMER [Dashuta] to find and purchase a vehicle suitable to build the desired concession truck on." (Agreement, ¶ 4(ix).) The Agreement listed one of Dashuta's duties as: to "give final approval on the truck before purchase and if 'LASK' is unable to find a truck that fits our needs/preferences, 'CUSTOMER' has the option to bring their own truck to build." (Agreement, ¶ 5(iv).) Finally, the Agreement included a section (¶ 8) with the heading, "Preliminary Agreement Regarding Used Truck Purchase (if applicable)," stating in pertinent part, "LASK offered CUSTOMER the option to purchase a brand new step van with manufacturer warranty. However, CUSTOMER opted to [*sic*] the more economical option of using a USED VEHICLE to build the food truck on. The parties agreed to the USED TRUCK purchase with the following condition[s]:

"8.a. CUSTOMER understands that used vehicle purchases are AS IS and there is NO WARRANTY on the vehicle.

"8.b. LASK will make good faith, reasonable efforts to find a reliable and good general value vehicle for CUSTOMER, as customer satisfaction is very important for LASK.

"8.c. LASK will notify CUSTOMER in writing (an electronic mail or a text message is sufficient to comply with this requirement) when LASK finds a suitable truck for CUSTOMER. Thereafter CUSTOMER has three (3) days to contact LASK in writing (an electronic mail or a text message is sufficient to comply with this requirement) if CUSTOMER wants to arrange his/her/its own inspection of the used truck prior to start manufacturing process on the truck [*sic*]. If CUSTOMER does not contact LASK, LASK assumes that the right to inspect the used vehicle was waived, the CUSTOMER wish[es] to purchase

3

the used truck AS IS, and LASK will proceed with the manufacturing process. . . ."

A shell vehicle was not procured and LASK did not manufacture a food truck for Dashuta. Each blamed the other for the failure.

We cannot fashion a summary of the circumstances of the search for a shell vehicle (and the subsequent breakdown of the parties' relationship) because the record before us does not include a transcript of the arbitration hearing or an enumeration of the exhibits actually admitted in that hearing.[1] Below we summarize the parties' positions on the matter and the arbitrator's factual findings, which provide context for LASK's contentions on appeal.

## II.    Dashuta Files a Complaint Against LASK

On January 4, 2019, Dashuta and Magnifico LLC (Dashuta's solely owned company) filed a complaint in this action, asserting causes of action against LASK and Szabolcs Apai (an individual who apparently owned LASK) for breach of the Agreement, violation of California's Unfair Competition Law

---

[1] The record on appeal includes Dashuta's responses to LASK's requests for production, attaching the documents Dashuta produced during discovery in the arbitration proceedings. LASK represents that these documents include all of the exhibits Dashuta introduced during the arbitration hearing. Without a transcript of the arbitration hearing, there is no foundation for these documents, and we have no witness testimony providing context for the documents.

4

(Bus. & Prof. Code, § 17200 et seq.), and fraud/fraudulent misrepresentation.[2]  Therein, Dashuta alleged, in pertinent part:

"Several weeks" after the parties executed the Agreement and Dashuta made the first payment under the Agreement, Lask (through Apai) informed Dashuta that it "had only been able to find shell vehicles for $22,000 and $25,000, respectively, which is almost double the promised price of $13,000."  LASK forwarded to Dashuta advertisements for the two vehicles.  Dashuta asked LASK "to keep looking" for a vehicle that satisfied the terms of the Agreement.  "After several more weeks," LASK reiterated that it could not "locate a suitable shell vehicle for less than $22,000."  Dashuta conducted "his own Google search" and found "the very same shell vehicles" on sale for $12,000 and $15,000, respectively.  When Dashuta confronted LASK with this information, LASK responded that the vehicles Dashuta found "could not be identical" to the vehicles it had found.

Dashuta also asserted in the complaint:  "After further back-and-forth, Plaintiff Dashuta concluded that defendants' modus operandi consisted of bait-and-switch tactics and making money from customers not just on the agreements but also on significant markup on parts procured for the customers.  [Italics omitted.]  Defendant [Apai] lures potential customers in by representing that he could procure shell vehicles at low prices; once a customer signs a contract, Defendant [Apai] informs them that no suitable shell vehicles are available at the promised price.  At this juncture, the customer has little choice but to pay the

---

[2] Plaintiff Magnifico LLC and defendant Apai are not parties to the judgment at issue, and they are not parties to this appeal.

5

significantly higher price for the shell vehicle. Defendants earn thousands of dollars through this scheme."

As alleged in the complaint, Dashuta concluded defendants LASK and Apai breached the Agreement by, among other things, "[f]ailing to find a shell vehicle for Plaintiffs for the agreed-upon price of $13,000." Dashuta also "determined that he [could not] trust defendants to perform their obligations under the Agreement." Therefore, he asked them to return the two payments he had made totaling $23,350, "less [a] reasonable amount to compensate Defendant LASK for any drawings or other work it performed pursuant to the Agreement." According to the complaint, Apai/LASK then ceased all communications with Dashuta.

In his breach of contract cause of action (and in the prayer for relief), in addition to damages according to proof, Dashuta sought "rescission of the Agreement based on Defendant [Apai]'s misrepresentations and fraudulent conduct in connection with carrying out his obligations under the Agreement." In the prayer for relief, Dashuta also sought interest on any monetary relief, costs and attorney fees, statutory damages (under the Unfair Competition Law), and punitive damages (on the fraud/fraudulent misrepresentation cause of action).

## III.    The Parties Stipulate to Arbitrate the Dispute

LASK moved to compel arbitration based on an arbitration clause in the Agreement (¶ 15), stating: "**<u>Disputes.</u>** Shall any dispute arise concerning this Agreement, prior to initiating a formal dispute, both parties to this Agreement shall make a good faith attempt to resolve the dispute informally. If such informal dispute resolution is unsuccessful, either party may proceed with **Arbitration**. All claims and disputes arising under or relating to

6

this Agreement are to be settled by binding arbitration, with the condition that the arbitrator shall not have the power to commit errors of law or legal reasoning and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error, in the state of California.  An award of arbitration may be confirmed in a court of competent jurisdiction.  Each party to bear their own costs and fees.  The arbitration fees and costs should be equally shared by the parties."

Dashuta did not oppose the motion to compel arbitration. Before the date set for the hearing, the parties filed in the trial court a "Stipulation for Binding Arbitration and Stay of Action." The stipulation included the language from the Arbitration clause quoted above stating that the "arbitrator shall not have the power to commit errors of law or legal reasoning and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error."  Pursuant to the stipulation, the court ordered the parties to "arbitrate any and all controversies related to this matter," and the court stayed the action pending the binding arbitration.

## IV.  The Arbitration

### A.  Dashuta's notice of intent to arbitrate/demand for arbitration and LASK's counterclaims

On or about January 15, 2020, Dashuta (and Magnifico LLC) filed a notice of intent to arbitrate/demand for arbitration against LASK (and Apai) before Judicate West under the Judicate West Commercial Rules.  In the section of the form for claim or relief sought, Dashuta stated, "Actual damages, direct and consequential, in the amount of at least $23,350; interest at the legal rate; rescission; statutory damages; costs and reasonable attorney's fees; punitive damages.  In its "Nature of

7

Dispute" attachment to the notice/demand for arbitration, Dashuta included the same factual allegations from the complaint that we summarized above.

LASK and Apai filed counterclaims against Dashuta. LASK asserted a breach of contract counterclaim against Dashuta, alleging LASK fully performed under the Agreement, but "Dashuta stopped his performance promised in the [Agreement] by refusing to accept suitable vehicles to use as a shell-vehicle to start building out the food truck, by attempting to cancel the contract without justification, [and] by failing to make progress payments pursuant to the terms of the [Agreement]." LASK claimed Dashuta's breach of the Agreement damaged LASK in an amount in excess of $25,000.

LASK also asserted a counterclaim against Dashuta for declaratory relief, seeking a determination (1) that Dashuta breached the Agreement by failing to perform pursuant to its terms; (2) that LASK was relieved of its duty to perform under the Agreement due to Dashuta's breach; (3) that LASK did not owe Dashuta anything under the Agreement; and (4) that Dashuta owed LASK costs under Code of Civil Procedure section 998.

Apai asserted a counterclaim against Dashuta for intentional infliction of emotional distress, alleging Dashuta "threatened Apai with physical harm and serious bodily injuries if Apai refused to return the money deposited by Dashuta with LASK under the terms of the [Agreement]." Apai sought mental and emotional distress damages and punitive damages from Dashuta.

**B.  The Arbitrator excludes LASK's exhibits for not providing them to Dashuta in advance of the arbitration hearing**

On February 8, 2021, two days before the date initially scheduled for the arbitration hearing, Dashuta (and Magnifico LLC) served a witness list, an exhibit list, and exhibits on LASK by email.  The arbitration hearing was continued at the request of LASK's counsel due to personal reasons.

At the continued arbitration hearing on March 8, 2021, LASK's counsel indicated that LASK (and Apai) intended to introduce exhibits at the hearing.  Dashuta's counsel objected because he had not seen the exhibits, which were not served in advance of the hearing.  LASK's counsel emailed the exhibits to Dashuta's counsel during the hearing.  The arbitrator (Hon. Joanne B. O'Donnell (Ret.)) reserved her ruling on the objection, allowing LASK and Apai to present their documentary evidence at the hearing, and requesting post-hearing briefing by the parties.

Because the record before us does not include a transcript of the arbitration hearing, we cannot provide an account of what occurred at the arbitration hearing (e.g., who testified, what they testified to, and which exhibits were introduced or admitted).

After the arbitration hearing, the parties submitted briefing on Dashuta's objection to LASK's (and Apai's) exhibits. Dashuta argued Judicate West Commercial Arbitration Rules required that exhibits be exchanged prior to the hearing, and there was no good cause to depart from the rules.  LASK argued it would have provided the documents if Dashuta had propounded discovery, but Dashuta did not.  LASK also argued there was no prejudice because its exhibits consisted of

9

documents that were equally available to Dashuta. Finally, LASK argued it was not required to disclose exhibits used for impeachment during cross-examination.

On March 31, 2021, the arbitrator held a hearing on the evidentiary matter and thereafter ruled in favor of Dashuta, excluding LASK's (and Apai's) exhibits.[3] In an April 6, 2021 written ruling, the arbitrator concluded Judicate West Commercial Arbitration Rules required the parties to exchange all exhibits prior to the hearing, including documents to be used for impeachment. The arbitrator found no good cause to depart from the rules.

Subsequently, in the Arbitration Award, the arbitrator explained that the evidentiary ruling excluding LASK's and Apai's exhibits "did not exclude testimony by [their] witnesses discussing those excluded exhibits." The arbitrator added, "To the extent that testimony is not incompetent hearsay, the [a]rbitrator has considered it."

C.    **Parties' post-hearing briefing on the merits of the dispute**

After the arbitrator issued the written ruling on the evidentiary matter, the parties submitted post-hearing briefing on the merits of the dispute. To aid in preparation of the briefing, LASK's counsel emailed Judicate West, requesting "the sound recording of the arbitration hearing," which had occurred over Zoom. A case manager from Judicate West responded, in pertinent part: "It seems there was a miscommunication and no recording was generated. The [arbitrator] was under the

---

[3] The record before us does not include a transcript of this March 13, 2021 hearing.

10

impression that counsel was going to record the hearing by their own means and did not receive any request during the arbitration hearing itself to employ any recording features. Based on my own review of the file, I did not find any request made to Judicate West directly to enable the recording feature in Zoom."[4]

In his opening brief on the merits, Dashuta argued LASK breached the Agreement by, among other things, failing to procure a suitable shell vehicle for $13,000. According to the brief, Dashuta testified at the arbitration hearing: that he informed Apai/LASK that the vehicle identification numbers of the shell vehicles LASK claimed were on sale for $24,500 and $22,500 matched the vehicle identification numbers of the shell vehicles Dashuta found on sale for $15,990 and $12,990 through his Internet search; and Apai responded that those vehicles "were not ideal anyway" because they had gas engines, and Apai could find Dashuta a shell vehicle with a diesel engine. According to Dashuta, Apai/LASK "did not locate and offer a truck to Dashuta for the agreed-upon price."[5]

---

[4] To the extent LASK challenges the judgment confirming the arbitration award on the ground there is no recording of the arbitration hearing, LASK has not established misconduct by the arbitrator or an error of law or legal reasoning permitting vacation of the Arbitration Award.

[5] We are not adopting Dashuta's characterization of evidence that is not before us. We include this summary of the factual account in Dashuta's brief because the parties' differing positions on the evidence provide context for LASK's contentions on appeal.

In the alternative, Dashuta argued the Agreement should be rescinded based on mutual mistake and no meeting of the minds, based on the parties' conflicting testimony regarding who was obligated under the Agreement to procure the shell vehicle. According to Dashuta's brief, "Dashuta testified that he was always under the impression that LASK would procure a truck [shell vehicle] for him and manufacture a food truck from it. [Citation to Dashuta's testimony, in general.] He testified that he relied on Mr. Apai's extensive expertise in finding a suitable truck. *Id.* Dashuta further testified that he lacked mechanical expertise to make a decision on his own as to what would be a suitable truck. *Id.* [¶] Mr. Apai, on the other hand, testified that LASK was not contractually obligated to procure a truck for Dashuta and that LASK was merely helping Dashuta. [Citation to Apai's testimony, in general.] Mr. Apai testified that it was Dashuta's sole responsibility to acquire a suitable truck. *Id.*"[6]

In seeking rescission of the Agreement, Dashuta argued LASK should return the $23,350 Dashuta paid and compensate Dashuta for other costs he incurred (e.g., costs associated with the incorporation of Magnifico LLC). Dashuta further argued that allowing LASK to keep the payments would constitute unjust enrichment because "LASK has not provided anything of value to Dashuta in exchange for the $23,350.00." According to Dashuta, LASK made one drawing related to the food truck, and

---

[6] Although Dashuta cited to witness testimony (in general) in his post-hearing briefing on the merits, the testimony is not attached to the brief. And, as we stated above, the record before us does not include a transcript of the witnesses' testimony (or any portion of the arbitration hearing). Nor is there a stipulation between the parties as to any witness's testimony.

12

there was no evidence corroborating Apai's testimony that LASK performed other work on the project. Dashuta also asserted that LASK's and Apai's counterclaims lacked merit based on the evidence presented at the arbitration hearing.

In response to Dashuta's opening brief, LASK argued in its post-hearing brief, in pertinent part, that "the issue of the shell vehicle was not a material breach but a thinly veiled attempt by Dashuta to get out of the [Agreement] as his [existing] pizza trailer business was not doing as well as he hoped," and "Dashuta knew that he would not be able to operate a successful pizza business from the pizza truck either." According to LASK, the shell vehicle that Dashuta found on sale for $12,990 was suitable (regardless of engine type), but Dashuta refused to purchase it, without explanation. LASK also argued that the Agreement only "required LASK 'to assist' Dashuta to find a suitable vehicle and not to unilaterally secure a truck for Dashuta." LASK also argued there was no fraud "in the inducement nor thereafter" (although Dashuta did not raise such a claim in his post-hearing briefing).

LASK further argued "the parties had a valid contract and meeting of the minds," as "Dashuta wanted a custom-made food truck manufactured by LASK, built out on a used truck, and LASK agreed to manufacture a custom-made food truck for Dashuta, built out on a used food truck platform. The fact that both parties were searching for suitable trucks shows that it was not material whose duty it was under the [Agreement] to find a suitable truck."

LASK also asserted that the evidence presented at the arbitration hearing supported LASK's and Apai's counterclaims against Dashuta. According to LASK, Apai testified that LASK's

13

damages were $41,862.10, "which included $6,112.50 in labor costs, $7,999.60 realized loss on equipment and material ordered, after deductions of income for selling steel cabinets and shelves for scrap metal, and returning items in exchange for restocking fees, lost profit of $14,250.00 and liquidated damages per contract."

In his post-hearing reply brief, Dashuta reiterated the arguments he made in his opening brief, as summarized above, including that the Agreement should be rescinded based on no meeting of the minds. Thereafter, LASK filed a sur-reply brief, responding to Dashuta's reply brief, which the arbitrator considered over Dashuta's objection.

### D. Arbitration Award

On June 30, 2021, the arbitrator issued an eight-page Arbitration Award. The arbitrator concluded Dashuta was entitled to rescission of the Agreement "based on no meeting of the minds and mutual mistake."

In the Arbitration Award, the arbitrator referenced specific provisions of the Agreement (¶¶ 4.ix, 7, 8.b & 8.c summarized above) under which the arbitrator concluded "LASK expressly agreed to find a suitable shell vehicle for [Dashuta] for $13,000." The arbitrator continued: "Apai testified at the hearing that the Agreement did not oblige LASK to find a suitable shell vehicle for [Dashuta] for $13,000. Instead, he claimed that LASK was merely obligated to help [Dashuta] to find a suitable vehicle. In support of this position, Mr. Apai relied on the following provision in the Agreement: 'LASK to assist CUSTOMER to find and purchase a vehicle.' [Citation.] This provision cannot be reconciled with the provision that LASK was to find a suitable shell vehicle for [Dashuta] for $13,000."

14

The arbitrator rejected LASK's argument that because both parties were searching for a suitable shell vehicle, it was immaterial whose duty it was under the Agreement to find such a vehicle. The Arbitration Award states: "The evidence at the hearing and the bulk of the parties' briefing demonstrates that the entire arbitration turned on whether the Agreement obligated LASK to find a suitable vehicle for $13,000. Accordingly, the terms concerning the obligation must be considered material. Based on the conflicting terms of the Agreement, and the parties' conflicting testimony concerning those provisions, the parties did not have a true meeting of the minds as to those provisions and there was no mutual consent."

"To return the parties to the status quo ante" upon rescission of the Agreement, the arbitrator awarded Dashuta the $23,350 he paid LASK and $224 he paid to the California Secretary of State for incorporating Magnifico LLC, plus interest on those amounts. The arbitrator ordered LASK (and not Apai) to pay the award.

Based on her conclusion that rescission of the Agreement was the appropriate remedy, the arbitrator rejected Dashuta's claims for breach of contract and unjust enrichment and LASK's counterclaim for breach of contract. The arbitrator stated in the award that Dahsuta had withdrawn his claim for fraud in the inducement. The arbitrator also concluded Apai did not prove his counterclaim for intentional infliction of emotional distress.[7]

---

[7] The arbitrator dismissed Magnifico LLC as a claimant based on a motion LASK and Apai made at the conclusion of the arbitration and their post-hearing briefing on the issue.

### V. LASK's Petition to Vacate the Arbitration Award and Dashuta's Petition to Confirm It

On October 8, 2021, LASK filed a petition to vacate the Arbitration Award. LASK argued the arbitrator exceeded her powers and made errors of law and legal reasoning in ruling the Agreement should be rescinded based on no meeting of the minds and mutual mistake, and the Arbitration Award cannot be corrected.[8] LASK further argued the arbitrator did not follow Judicate West Commercial Arbitration Rules in excluding LASK's evidence and deciding the matter on a theory—rescission based on mutual mistake—Dashuta first raised in his post-hearing briefing. Dashuta filed an opposition to LASK's petition.

On December 23, 2021, Dashuta filed a petition to confirm the Arbitration Award. LASK filed an opposition to Dashuta's petition.

On February 1, 2022, the trial court held a hearing on the parties' petitions.[9] The court denied LASK's petition to vacate the Arbitration Award and granted Dashuta's petition to confirm the Arbitration Award. On April 8, 2022, the court entered judgment in favor of Dashuta and against LASK in the amount of $23,574 (the amount awarded by the arbitrator).

---

[8] As stated above, the arbitration clause at issue here specifies that "the arbitrator shall not have the power to commit errors of law or legal reasoning and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error."

[9] There is no reporter's transcript of this February 1, 2022 hearing in the record on appeal.

## DISCUSSION

## I. Legal Principles Regarding Arbitration and Scope of Our Review

LASK moved the trial court to vacate the Arbitration Award under several of the statutory grounds for doing so set forth in Code of Civil Procedure section 1286.2,[10] namely: (1) "The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator" (§ 1286.2, subd. (a)(3)); "The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" (§ 1286.2, subd. (a)(4)); and "The rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title" (§ 1286.2, subd. (a)(5)).

"California law favors alternate dispute resolution as a viable means of resolving legal conflicts." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) Generally, "an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).) "In cases involving private arbitration, '[t]he scope of arbitration is . . . a matter of agreement between the parties' [citation], and ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission." ' " (*Id.* at pp. 8-9.) "[T]o take themselves out of the general rule that the merits of the [arbitration] award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of

---

[10] Undesignated statutory references are to the Code of Civil Procedure.

17

arbitral authority that is reviewable by the courts.  Here, the parties expressly so agreed, depriving the arbitrator[] of the power to commit legal error.  They also specifically provided for judicial review of such error."  (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1361.)  Accordingly, LASK and Dashuta agree that this court may review "errors of law or legal reasoning" per the arbitration clause in the Agreement, but not errors of fact.

## II. The Trial Court Had Authority to Grant Dashuta's Petition to Confirm the Arbitration Award

Under section 1285.4, subdivision (a), a petitioner must "[s]et forth the substance of or have attached a copy of the agreement to arbitrate."  LASK contends the trial court had "no power" to grant Dashuta's petition to confirm the Arbitration Award because Dashuta did not comply with section 1285.4, subdivision (a).  LASK is mistaken.  A copy of the Agreement containing the arbitration clause is attached to the declaration of Dashuta's counsel in support of Dashuta's petition to confirm the Arbitration Award.  In support of this argument, however, LASK points us to a different declaration from Dashuta's counsel—the declaration in support of Dashuta's opposition to LASK's petition to vacate the Arbitration Award—to which the Agreement was not attached (and need not have been attached).

Alternatively, LASK contends the trial court had no power to confirm the Arbitration Award because the arbitrator voided the Agreement *ab initio*, "based on Dashuta's challenge to formation," so the agreement to arbitrate "no longer existed" and the arbitrator had no power to enter an award and the court had no jurisdiction to confirm an award.  LASK cites no pertinent case law for this novel argument that it did not raise in the trial

18

court (or before the arbitrator). Rather, LASK relies on inapposite cases where courts found arbitration clauses unenforceable post-arbitration because the agreements of which they were a part were illegal or against public policy. (See *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co, Inc.* (2018) 6 Cal.5th 59, 68 ["law firm's conflict of interest rendered the agreement . . ., including its arbitration clause, unenforceable as against public policy"]; *Loving & Evans v. Blick* (1949) 33 Cal.2d 603, 607, 614 [contract made in violation of contractor's licensing laws designed to protect the public is entirely illegal and void].) Here, no one has argued that the Agreement is illegal or against public policy and that such illegality or violation of public policy affected the arbitration clause.

LASK has never disputed that the parties agreed to arbitrate all disputes relating to the manufacture of the food truck. In fact, it was LASK who moved to compel arbitration and the parties thereafter stipulated to binding arbitration of their claims pursuant to the arbitration clause in the Agreement. Both sides asked the arbitrator to interpret the Agreement (in Dashuta's claims and in LASK's counterclaims), and the arbitrator did, taking evidence in aid of her interpretation. LASK cites no authority indicating an arbitrator lacks power to grant rescission of an agreement containing an arbitration clause based on mutual mistake/no meeting of the minds, and we are aware of none.

## III. The Arbitrator Did Not Commit Legal Error in Allowing Dashuta to Advance the Theory of Mutual Mistake

LASK contends the trial court erred in denying the petition to vacate the Arbitration Award, arguing the arbitrator committed legal error (thereby exceeding her power under the arbitration clause in the Agreement) by entering an award "[o]n claims never brought by Dashuta (i.e., mutual mistake and/or rescission of contract based on mutual mistake, thus LASK did not introduce[] evidence to counter it)."  LASK acknowledges that Dashuta sought rescission of the Agreement in both his complaint in the trial court and in his demand for arbitration before Judicate West.  But LASK argues that neither the complaint nor the demand for arbitration put LASK on notice that Dashuta would seek rescission based on mutual mistake (as opposed to rescission based on misrepresentations and fraudulent conduct, as asserted in the complaint).  We reject this contention of legal error for several reasons.

First, both in the complaint and in the Nature of Dispute (attached to the demand for arbitration), Dashuta alleged LASK breached the Agreement by, among other things, failing to procure a shell vehicle for the contract price of $13,000.  In its counterclaims in the arbitration, LASK alleged Dashuta breached the Agreement by, among other things, refusing to accept suitable vehicles to be used as a shell vehicle.  Thus, LASK was on notice that the arbitrator had to determine the parties' obligations with respect to the purchase of the shell vehicle in order to decide the parties' claims/counterclaims.  Whether the parties in fact agreed to the same terms regarding purchase of the shell vehicle was part of that determination.

20

Second, we do not know if there was any discussion at the arbitration hearing regarding rescission of the Agreement and the basis or bases on which Dashuta sought rescission, because the record does not include a transcript of the arbitration hearing (or a settled statement or stipulation as to what occurred).  We do know, before the arbitrator made the award, Dashuta argued for rescission of the Agreement based on mutual mistake and no meeting of the minds in two post-hearing arbitration briefs.  We also know LASK responded to these arguments in its own post-hearing briefing, without objecting that Dashuta had not properly pleaded his claims, expressing surprise that Dashuta was raising these issues, or indicating it was prejudiced by the introduction of new issues.  It was incumbent upon LASK to inform the arbitrator that LASK believed the issue Dashuta argued in his pre-award briefing was not properly pleaded.  "[W]e cannot permit a party to sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the . . . issue in a motion to vacate the arbitrator's award.  A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration.' "  (*Moncharsh*, *supra*, 3 Cal.4th at p. 30.)

Finally, even if the record indicated LASK preserved this contention for our review, we would not conclude in LASK's favor.  An arbitrator has discretion to determine "what issues are necessary to the decision" and "discretion to determine the extent of remedies."  (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372, 374.)  "Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the

21

contract, and award any relief rationally related to his or her factual findings and contractual interpretation." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182.) Here, according to the Arbitration Award, based on testimony from Dashuta and Apai (LASK's owner), the arbitrator determined that Dashuta and LASK had differing interpretations of conflicting provisions of the Agreement concerning the purchase of the shell vehicle. According to the Arbitration Award, "evidence at the hearing," which is not before us, "and the bulk of the parties' briefing demonstrates that the entire arbitration turned on whether the Agreement obligated LASK to find a suitable vehicle for $13,000." Based on her interpretation of the contract and factual findings from the evidence, the arbitrator concluded "the parties did not have a true meeting of the minds as to those provisions and there was no mutual consent," and the appropriate remedy was rescission. The arbitrator had the *power* to determine these issues. Next, we address LASK's challenges to the merits of the arbitrator's determinations.

## IV. This Court May Not Review the Arbitrator's Factual Findings On Mutual Mistake and No Meeting of the Minds

LASK contends the trial court erred in denying the petition to vacate the Arbitration Award, arguing "it was an erroneous *conclusion of law* [for the arbitrator] to find that mutual mistake existed as to a material term of the [Agreement] warranting rescission." (Italics added.) LASK asserts the arbitrator's rulings on mutual mistake/no meeting of the minds are wholly legal questions that this court may review on appeal from the judgment confirming the Arbitration Award. We disagree that these are *strictly* legal questions that we may review because the

22

arbitration clause allows for judicial review of errors of law and legal reasoning. As explained more fully below, the arbitrator concluded that the provisions of the Agreement regarding which party was obligated to find a suitable shell vehicle are "conflicting" (i.e., ambiguous), and we agree with this legal conclusion. Due to the ambiguity of the Agreement, the arbitrator took evidence and made factual findings in determining that the parties were operating under a mutual mistake and that there was no meeting of the minds. We may not review the arbitrator's factual findings for error (*Moncharsh*, *supra*, 3 Cal.4th at p. 11), and we conclude there is no error of law or legal reasoning appearing on the face of the Arbitration Award.

The interpretation of a contract is a question of law, as pertinent here, "only when it is based on the words of the instrument alone" or "when there is no conflict in the extrinsic evidence." (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.) "But when, as here, ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact . . . ." (*Ibid.*)

" ' " '[W]here the existence . . . of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the . . . trier of the facts to determine whether the contract did in fact exist . . . [.]' " ' [Citations.] 'Mutual assent or consent is necessary to the formation of a contract' and '[m]utual assent is a question of fact.' " (*Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 771-772.)

23

There is no mutual consent if both parties are mistaken on a matter that goes to the very essence of the contract. (See, e.g., *Balistreri v. Nevada Livestock Production Credit Assn.* (1989) 214 Cal.App.3d 635, 641-642 [in " 'certain cases where there is a mutual misunderstanding regarding the identity of the subject matter of the contract, and either both parties are at fault in creating the mistake, or neither of the parties is at fault, there is no meeting of the minds as to a material matter, and no contract is formed' "].) "A party may rescind a contract if his or her consent was given by mistake." (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 278, citing Civ. Code, § 1689, subd. (b)(1).)

"In determining whether a mutual mistake has occurred, a court may consider parol evidence. [Citation.] Such evidence is admissible to show mutual mistake even if the contracting parties intended the writing to be a complete statement of their agreement. [Citation.] 'It is the rule that, where the writing itself, through mistake, does not express the intention of the parties who entered into it . . . and the writing does not therefore contain the real contract between the parties, the objection as to parol evidence is without merit.' [Citation.] Extrinisc evidence is necessary because the court must divine the true intentions of the contracting parties and determine whether the written agreement accurately represents those intentions." (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 525.)

Here, the arbitrator concluded the provisions of the Agreement regarding which party was obligated to find a suitable shell vehicle are "conflicting" (i.e., ambiguous). We agree with this legal conclusion. On the one hand, there are multiple provisions of the Agreement that support Dashuta's position that LASK was obligated to find a suitable shell vehicle for Dashuta.

For one, $13,000 of the contract price that Dashuta was to pay to LASK was earmarked specifically for the shell vehicle, indicating that LASK would procure the vehicle for Dashuta. (Agreement, ¶ 7.) Next, the Agreement states LASK "will make good faith, reasonable efforts to find a reliable and good general value vehicle for" Dashuta, and LASK will notify Dashuta in writing "when LASK finds a suitable truck for" Dashuta. (Agreement, ¶ 8.c.) On the other hand, there is a provision of the Agreement that supports LASK's position that LASK was to merely *assist* Dashuta in finding a suitable vehicle, and the Agreement did not place the ultimate obligation to find the vehicle on LASK: "LASK to assist CUSTOMER to find and purchase a vehicle suitable to build the desired concession truck on." (Agreement, ¶ 4.ix.)

The Arbitration Award indicates that due to this ambiguity in the Agreement, the arbitrator heard testimony from Dashuta and Apai (LASK's owner) regarding their understanding of the terms of the Agreement and the parties' obligations thereunder. The testimony is not before us, and even if it were, we could not review the arbitrator's factual findings, based on extrinsic evidence, that due to the parties' mutual mistake regarding the parties' obligations under the Agreement, "the parties did not have a true meeting of the minds as to those provisions and there was no mutual consent."[11] The arbitrator further concluded:

---

[11] LASK relies on *Hedging Concepts, Inc. v. First Alliance Mortgage Company* (1996) 41 Cal.App.4th 1410, 1421 for the proposition that one party's "subjective misinterpretation of the contract" does not constitute the "type of 'mistake' that will support rescission." LASK's reliance on this case is misplaced. Here, the arbitrator made a factual finding, based on the testimony, that each party understood their obligations under the Agreement differently under the conflicting (ambiguous) terms of

25

"The evidence at the hearing and the bulk of the parties' briefing demonstrates that the entire arbitration turned on whether the Agreement obligated LASK to find a suitable vehicle for $13,000. Accordingly, the terms concerning that obligation must be considered material." We have no legal basis to disturb this finding either.

LASK contends rescission was not an appropriate remedy because Dashuta was not harmed under LASK's interpretation of the Agreement. Without a record from the arbitration hearing, we cannot address this contention regarding harm.

## V. This Court May Not Review the Arbitrator's Determination Regarding Monetary Compensation

Lask contends the trial court erred in denying the petition to vacate the Arbitration Award, arguing the arbitrator made an error of legal reasoning because she "did not consider LASK's damages in relation to rescission of the contract." As LASK indicates, the "purpose of rescission is to restore the parties to the position they would have been in had they not entered the contract." (*Akin v. Certain Underwriters at Lloyd's London* (2006) 140 Cal.App.4th 291, 298.) LASK asserts the arbitrator "concentrated on Dashuta only and abandoned all rights for equitable reinstatement of financial conditions to pre-contract status for LASK."

To the extent LASK believed the arbitrator failed to consider monies LASK expended in performing under the contract, LASK's recourse was to request the arbitrator correct the award under rule 13.B.4 of the Judicate West Commercial

---

the Agreement. As explained above, we may not review this factual finding on appeal from a judgment confirming an arbitration award.

Arbitration Rules, which provides in pertinent part: "Within 10 days after service of the award, any party, in accordance with Rule 3.B may give notice to the arbitrator, the JW arbitration administrator, and the other parties, and request that the arbitrator correct any clerical, typographical or computation errors, or any errors of a similar nature in the award, *or make an additional award as to specific Claims or Counterclaims presented in the arbitration but not determined in the award.*" (Italics added.)  There is no indication in the record that LASK asked the arbitrator to address this complaint about the Arbitration Award.

Moreover, the Arbitration Award expressly states the arbitrator considered and determined what would return the parties to their pre-contract positions.  In pertinent part, the award states: "Upon rescission, the 'parties must be put in the same position they occupied before the execution of the contract as far as it is possible to do so.'  [Citation.]  'When a contract is rescinded . . . the purpose of damages is to put the parties in the position they were in before the contract rather than to give either party the benefit of his bargain.' "  The arbitrator went on to make the following finding: "To return the parties to the status quo ante, Respondent [LASK] must return the amount of $23,350.00 to Claimant [Dashuta]."  We do not have before us any evidence that was admitted at the arbitration hearing in support of LASK's claim for damages (e.g., Apai's testimony), and even if we did, we could not review or disturb the arbitrator's factual findings as to what would "return the parties to the status quo ante."

## VI.  LASK Has Not Established Prejudice From the Arbitrator's Exclusion of Its Documentary Evidence

LASK contends the arbitrator's exclusion of its documentary evidence, including for impeachment purposes, "resulted in an unfair, unbalanced, biased procedure, prejudicing LASK" and constituting grounds for vacation of the Arbitration Award.  As set forth above, LASK moved the trial court to vacate the Arbitration Award on grounds, including (1) that the "rights of the party were substantially prejudiced by misconduct of a neutral arbitrator" (§ 1286.2, subd. (a)(3)); and (2) the "rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title" (§ 1286.2, subd. (a)(5)).

LASK did not exchange its documentary evidence with Dashuta in advance of the arbitration hearing.  Rule 8.A.1 of the Judicate West Commercial Arbitration Rules provides:  "The parties, in good faith, will exchange all non-privileged documents and other information (including electronically stored information) on which they intend to rely in support of their position in the dispute or claim, including copies of all such documents and other information in their possession, custody, or control, and names of individuals whom they may call as witnesses at the arbitration hearing.  The arbitrator may modify these obligations at the initial or subsequent CMC."  Rule 8.A.2 provides:  "As the parties become aware of new documents or information, all parties will continue to be under an obligation to supplement the exchange of documents and information described in Rule 8.A.1.  *Documents that were not previously exchanged,* and witnesses and experts that were not previously

28

identified, *will not be received into evidence at the hearing, unless agreed upon by the parties or upon a showing of good cause as determined by the arbitrator.*"  (Italics added.)

As discussed above, the arbitrator excluded LASK's documentary evidence for violation of these rules, finding no good cause to depart from the rules.  LASK blamed its failure to exchange its documents on the arbitrator, for not setting a date for the exchange of documents, and on Dashuta, for not propounding discovery on LASK.

Without a transcript of the arbitration hearing, we cannot determine prejudice, given that the arbitrator allowed LASK to offer testimony about the excluded documents and "considered" that testimony "[t]o the extent that testimony is not incompetent hearsay."  Moreover, we have no way to determine that LASK had "material" evidence (§ 1286.2, subd. (a)(5)) that could only be introduced by means of the excluded documents, and not the witness testimony it presented.  Accordingly, because LASK cannot establish prejudice, we need not decide if the arbitrator committed any errors of law or legal reasoning in making the evidentiary rulings.

## DISPOSITION

The judgment is affirmed.  Each side is to bear its own costs on appeal per the arbitration clause in the Agreement.

NOT TO BE PUBLISHED


CHANEY, J.

We concur:


ROTHSCHILD, P. J.                     BENDIX, J.

29